**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Shirley MAGGITT and Tommy Maggitt,
Defendants-Appellants.**

No. 85–4468.

United States Court of Appeals,
Fifth Circuit.

March 6, 1986.

Robert B. McDuff, University of Mississippi Law School, University, Miss. (Court-appointed), for defendants-appellants.

Glen H. Davidson, U.S. Atty., John R. Hailman, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Appellants Shirley Maggitt and Tommy Maggitt appeal from their obstruction of justice convictions under 18 U.S.C. § 1512 and 18 U.S.C. § 1513. Finding appellants'

contentions to be without merit, this Court affirms the judgment of the district court.

## I. BACKGROUND

On August 31, 1984, appellant's brother Willie Maggitt was arrested for armed robbery of a federally insured bank at Oakland, Mississippi. Willie Harold Williams (Harold Williams) provided significant information leading to the arrest of Willie Maggitt. Williams also testified on three occasions before a federal grand jury investigating the bank robbery.

Willie Maggit's federal trial for bank robbery was set for January 14, 1985.[1] In early December of 1984, Shirley Maggitt approached Williams and said "She hoped [Williams] did not go up there and ... [get] her involved in it [the robbery charges]." Later that month, on December 25, 1984, Shirley Maggitt told Williams that she "knowed what [Williams] said and she stood too much to lose and she would kill [Williams]" because she thought Williams had said something to implicate her in the bank robbery.

On January 11, 1985, Williams saw Tommy Maggitt at a cafe. Tommy Maggitt told Williams that Williams was a "snitch" who had "got my brother locked up" and that Williams "could have an accident." Earlier that evening, Tommy Maggitt had told an acquaintance of Williams that "your boy Harold is a snitch" and "he could have an accident." Tommy Maggitt told another acquaintance that "the boy [Harold Williams] told the FBIs and the police everything" and that he was going to kill Williams.

The FBI had advised Williams to promptly contact the FBI if he received any threatening communications. Within an hour after seeing Tommy Maggitt at the cafe on January 11, Williams went to the local police department and reported Tommy Maggitt's remarks. After being asked if he had received any other threatening communications, Williams reported Shirley Maggitt's remarks which had occurred nearly three weeks earlier. Williams later testified that he delayed in reporting Shirley Maggitt's comments because he "did not think nothing about it" because he knew "she was not going to hurt me."

Shirley and Tommy Maggitt were each charged in a single indictment with one count of tampering with a witness in violation of 18 U.S.C. § 1512[2] and a second count of retaliating against a witness in violation of 18 U.S.C. § 1513.[3] Prior to

---

1. Willie Maggitt ultimately pled guilty to a charge of armed bank robbery.

2. 18 U.S.C. § 1512 provides in pertinent part:
 (a) Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
 (1) influence the testimony of any person in an official proceeding;
 (2) cause or induce any person to—
 (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
 (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
 (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
 (D) be absent from an official proceeding to which such person has been summoned by legal process; or

 (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
 shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

3. 18 U.S.C. § 1513 provides:
 (a) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—
 (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or
 (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial

trial, defense counsel filed a number of pretrial motions on behalf of Shirley and Tommy Maggitt including: (1) a motion to sever the defendants for trial; (2) a motion to dismiss count three of the indictment charging Tommy Maggitt with violating 18 U.S.C. § 1513 for failure to state all of the essential elements of the offense; and (3) a motion to dismiss or require an election of counts because of alleged multiplicity in the indictment. The district court denied each motion. Following a joint trial, the Maggitts were convicted on each of the four counts contained in the indictment.

Both now appeal from their respective convictions. On appeal, Shirley Maggitt contends that the evidence produced at trial was insufficient to support her convictions. Tommy Maggitt challenges the district court's denial of his pretrial motions. Tommy Maggitt also contends that the district court committed reversible error by allowing the Government to introduce evidence regarding his previous incarceration and his allegedly violent and dangerous character.

## II. SUFFICIENCY OF THE EVIDENCE TO CONVICT SHIRLEY MAGGITT UNDER 18 U.S.C. § 1512 AND 18 U.S.C. § 1513

Shirley Maggitt challenges the sufficiency of the evidence to support her convictions for witness tampering under 18 U.S.C. § 1512 and retaliation against a witness under 18 U.S.C. § 1513. 18 U.S.C. § 1512 punishes only those threats made with the intent to cause the witness to withhold future testimony. Similarly, 18 U.S.C. § 1513 punishes only threats made with an intent to retaliate against a government witness. Shirley Maggitt contends that the evidence adduced at trial was insufficient to establish that she had the requisite intent to violate either statutory provision.

proceedings given by a person to a law enforcement officer; or attempts to do so, shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

■ Our review of the sufficiency of evidence to support a conviction is limited. As this Court stated in *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983):

It is not necessary that the evidence exclude every reasonably hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

In making this review, this Court views the evidence presented and the reasonable inferences to be drawn therefrom in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ Intent may, and generally must, be proven circumstantially. Generally, the natural probable consequences of an act may satisfactorily evidence the state of mind accompanying the act, even when a particular mental attitude is a crucial element of the offense. *United States v. Jackson,* 513 F.2d 456, 461 (D.C.Cir.1975). In determining whether a threat was intended to influence future conduct under 18 U.S.C. § 1512, it is the endeavor to bring about a forbidden result and not the success in actually achieving the result that is forbidden. *See generally United States v. Jackson,* 513 F.2d 456, 460 (D.C.Cir.1975); *United States v. De Stefano,* 476 F.2d 324, 330 (7th Cir.1973) (it is not necessary to prove that a witness was actually intimidated by the threats). However, whether a threat had a reasonable tendency to influence the witness is relevant in determining an accused's state of mind. *United States v. Harris,* 558 F.2d 366, 369 (7th Cir.1977). Also, under 18 U.S.C. § 1513, the Government need not establish an intent to carry out the threat; the only intent required is

(b) There is extraterritorial Federal jurisdiction over an offense under this section.

an intent to retaliate. *United States v. Velasquez,* 772 F.2d 1348 (7th Cir.1985).

The evidence of Shirley Maggitt's intent to influence future testimony and intent to retaliate is far from overwhelming. Nevertheless, we conclude that the evidence of intent is legally sufficient to support her convictions under 18 U.S.C. § 1512 and 18 U.S.C. § 1513. Shirley Maggitt was concerned that Williams might implicate her as an accomplice in the bank robbery. Williams had told the police that although Shirley Maggitt had not at the time known of the bank robbery, she later accepted part of the proceeds of that robbery and knew that Willie Maggitt had improperly obtained the money.

In early December of 1984, Shirley Maggitt saw Williams at a laundromat and told him that she hoped he would not further implicate her in the bank robbery. Later that month, on December 25, 1984, Shirley Maggitt encountered Williams on the street. Regarding that encounter, Williams testified as follows:

Q: What happened?

A: She told me that she had read the report[4] and she knowed what I said and she stood too much to lose and she would kill me or something of that nature.

Q: Did that surprise you?

A: Yes. I really did not think nothing about it. I thought she was just— Thought maybe if I had said something to implicate her or something like that.

Record Vol. III at 108. Williams did not immediately report this incident to the FBI based on his belief that Shirley Maggitt would not actually harm him.

Shirley Maggitt's threat to kill Williams was reported only after Tommy Maggitt threatened Williams on January 11, 1985. Following Tommy Maggitt's threat, Williams went to the local police station to report the incident "because [he] just want-ed to get *them* off [his] back...." Record Vol. III at 137. Regarding his report to the local police department, Williams testified:

I told them that Tommy Maggitt had threatened me, and they had asked me had I had any more threats against me, and I said his sister [Shirley Maggitt] had threatened me too.

Record Vol. III at 112. Williams further testified that in reporting these threats, he had never intended for the Maggitts be imprisoned.

█ Shirley Maggitt correctly states that the jury could have concluded based on the foregoing evidence· that she lacked the intent required to violate either 18 U.S.C. § 1512 or 18 U.S.C. § 1513. Shirley Maggitt had been a friend and neighbor of Williams for years. Moreover, the fact that Williams was not actually influenced by her threat was relevant in determining Shirley Maggitt's state of mind.[5] Thus, the jury could have concluded that Shirley Maggitt was just "blowing off steam."

█ Nevertheless, viewing the evidence presented and the reasonable inferences to be drawn therefrom in the light most favorable to the Government, the jury could have found beyond a reasonable doubt that Shirley Maggitt intended to influence Williams to not provide any further assistance to the FBI. The jury could also have found beyond a reasonable doubt that Shirley Maggitt's threat was intended in retaliation against Williams for his earlier testimony before the grand jury. Thus, the evidence was legally sufficient to support Shirley Maggitt's convictions under 18 U.S.C. §§ 1512 and 1513.

### III. RULE 8(b) MISJOINDER

█ Tommy Maggitt contends that his case was misjoined with that of his sister

---

4. This reference is apparently to an affidavit for search warrant which had been disclosed earlier in December to counsel for Willie B. Maggitt. The pertinent part of the affidavit revealed on its face that the only person who could have given the information to the FBI was witness Harold Williams.

5. However, contrary to Shirley Maggitt's suggestion, the affect of her threat on Williams is not conclusive in determining her state of mind. Rather, the affect of the threat is only a factor to be weighed in determining intent.

Shirley Maggitt. Rule 8(b) of the Federal Rules of Criminal Procedure governs the initial joinder of defendants in a criminal case. Rule 8(b) provides that:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Misjoinder under Rule 8(b) is a matter of law and completely reviewable on appeal. *United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir.1975). The purpose of this rule is to balance the need to avoid potential prejudice which may result from joining multiple defendants for trial with the need to attain trial efficiency.

The critical inquiry is whether all of the counts involved conduct that was part of the same series of acts or transactions. The answer to that depends

> "on the relatedness of the facts underlying each offense.... [W]hen the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper." *United States v. Gentile*, 495 F.2d 626, 630 (5th Cir.1974). When there is no "substantial identity of facts or participants between the two offenses, there is no 'series' of acts under Rule 8(b)." *Marionneaux*, 514 F.2d at 1249.

*United States v. Welch*, 656 F.2d 1039, 1049 (5th Cir.1981).

In the instant case, much of the same proof was required to establish the individual offenses committed by Shirley Maggitt and Tommy Maggitt. The same victim was involved. Moreover, the Maggitts shared the same motive for retaliating against Williams or attempting to influence his future testimony—loyalty to their brother Willie

Maggitt. Thus, much of the same evidence relevant to establishing Tommy Maggitt's motive was also relevant to establishing Shirley Maggitt's motive. Consequently, considerable judicial economy considerations weighed in favor of a joint trial. Finally, the Maggitts acted with the same aim—to prevent Williams' testimony against Willie Maggitt and to retaliate against Williams for prior testimony. *See United States v. Nettles*, 570 F.2d 547, 551 (5th Cir.1978).

■ Assuming, however, that a Rule 8(b) misjoinder did occur in the instant case, we nevertheless conclude that the error was harmless. In *United States v. Lane*, ─ U.S. ──, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), the Supreme Court held "that an error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" Thus, the Supreme Court rejected this Circuit's "inherent prejudice" approach in favor of a harmless error misjoinder inquiry.

■ We note that the harmless error inquiry under Rule 8(b) is an extremely weighty matter implicating profound notions of fairness and justice, and, thus, must be undertaken with great caution. In *Lane*, the Supreme Court identified several factors relevant to the Rule 8(b) harmless error inquiry: (1) overwhelming evidence of guilt; (2) carefully crafted limiting instructions likely to be successful given the small number of defendants and the ease in which the jury could segregate the evidence relating to the misjoined count; and (3) the likelihood that the misjoinder did not result in the introduction of prejudicial evidence otherwise inadmissible in the separate trial of an individual defendant.

Application of these factors leads us to conclude that Tommy Maggitt was not prejudiced by his joinder with Shirley Maggitt.[6] First, given the strength and nature

---

**6.** Shirley Maggitt has challenged on appeal only the sufficiency of the evidence to support her convictions.

of the evidence against Tommy Maggitt, any evidence relating to his sister's guilt could have had no influence on the jury's verdict. The uncontradicted evidence at trial indicated that Tommy Maggitt had strong motives for attempting to retaliate against Williams for his prior testimony and for attempting to influence Williams' future testimony. Willie Maggitt was Tommy's brother. Moreover, sufficient evidence existed to support a conclusion that Willie Maggitt had used a portion of the robbery proceeds to bail Tommy Maggitt out of jail. This indicated a close relationship between the brothers.

The evidence further indicated that Tommy Maggitt's threatening communications and conduct towards Williams were far more than simply an isolated angry outburst. Several credible witnesses testified that Tommy Maggitt had made several threatening comments regarding his intention to harm Williams throughout the evening of February 11, 1985. After threatening Williams at Brock's Cafe, Tommy Maggitt later followed Williams to Tony's Pool Room in a further attempt to intimidate Williams. This communication and conduct occurred just three days before Willie Maggitt was scheduled to go to trial for armed bank robbery.

Williams was frightened by Tommy Maggitt's activities and immediately reported the threats to the police. Williams testified at trial that he did not want Tommy Maggitt to go to jail because Williams was afraid of what Tommy Maggitt would do when released. Tommy Maggitt produced no evidence to refute the above evidence clearly establishing his guilt. No theory of Tommy Maggitt's defense was undermined by the joinder.[7]

The bulk of evidence at trial was directed toward establishing the Maggitts' motive for threatening Williams and detailing Tommy Maggitt's threats to Williams and the effect of those threats on Williams. The facts of the case were not complicated, essentially revolving around three separate and easily segregated incidents—Shirley Maggitt's two December contacts with Williams and Tommy Maggitt's January 11 contact with Williams. The trial itself was conducted in a single day and involved only two defendants. At the close of trial, the judge instructed the jury that:

> In this case, a separate crime is charged in each count of the indictment. Each charge and the evidence pertaining to it should be considered separately. The fact that you may find the Defendant guilty or not guilty as to one of the offenses charged should not control your verdict as to any other offense charged.

Absolutely no indication exists that the jury misunderstood or disobeyed this instruction or that the instruction was not successful in light of the simplicity of the case.

Given our conclusion that Tommy Maggitt was not in any way prejudiced by the introduction of evidence regarding Shirley Maggitt's guilt, we need not speculate regarding the admissibility of such evidence had Tommy Maggitt been tried separately.[8]

## IV. UNDULY PREJUDICIAL EVIDENCE

Tommy Maggitt contends that the district court erred in allowing the Government to introduce evidence indicating; (1) that Tommy Maggitt had been incarcerated for a time in the Grenada County Jail; (2) that the FBI tape-recorded Harold Williams' initial statement implicating Willie Maggitt as the bank robber because of fear

---

7. Tommy Maggitt contends that his spontaneity defense was undermined by evidence tending to indicate that he and his sister were acting in concert. However, no suggestion was made at trial that the Maggitts were acting in concert. Moreover, Tommy Maggitt does not appear to have pressed such a defense at trial. Finally, such a defense would have been clearly ineffective given the evidence outlined above.

8. Tommy Maggitt's claim that he was prejudiced due to evidence linking his sister to the bank robbery is without merit. Tommy Maggitt's link to the robbery was the same as that of his sister—receipt of stolen money. Tommy Maggitt's additional claims of prejudice are wholly lacking in merit.

that something might happen to Williams; and (3) that Williams had been told Tommy Maggitt was a very violent person. According to Tommy Maggitt, the district court erred in failing to exclude this evidence as unfairly prejudicial under Rule 403 of the Federal Rules of Evidence and as irrelevant evidence of bad character under Rule 404(b).[9]

Rule 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The standard for admitting evidence pursuant to Rule 404(b) requires the trial judge to apply a two-step test. *United States v. Chagra,* 754 F.2d 1186, 1189 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 255, 88 L.Ed.2d 262 (1985); *United States v. Wilkes,* 685 F.2d 135, 137–38 (5th Cir.1982). First, the trial judge must determine that the evidence is relevant to an issue other than the defendant's character. None of the evidence complained of by Tommy Maggitt was introduced to prove his bad character. Rather, the Government introduced the evidence to establish Maggitt's motive and intent in threatening Williams.

Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice. *See* Fed. R.Evid. 403.[10] In *United States v. Shaw,* 701 F.2d 367, 386 (5th Cir.1983), *cert. de-*

*nied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984), we stated the standard for reviewing a trial court's decision to admit evidence objected to as unduly prejudicial: "[t]he duty of the appellate court is to assess its relevancy and probative value, and the district court's ruling will be reversed '[r]arely and only after a clear abuse of discretion.'"

No such abuse of discretion occurred in the instant case. The evidence indicating that Tommy Maggitt had recently been incarcerated in the Grenada County Jail provided relevant background information to understanding Maggitt's motive in threatening Williams.[11] Such background information is frequently necessary to establish motive in obstruction of justice cases. *See, e.g., United States v. Arnold,* 773 F.2d 823, 833 (7th Cir.1985); *United States v. Weiss,* 491 F.2d 460, 466–67 (2d Cir.), *cert. denied,* 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974). Moreover, the evidence was not unduly prejudicial since it was brought out that Maggitt was being held in the county jail on relatively minor marijuana possession charges which was ultimately dismissed.

Similarly, the district court could have properly determined that evidence indicating that the FBI had tape-recorded Williams initial statement was not unduly prejudicial. While the evidence could reflect FBI concern that Williams would be physically prevented from providing subsequent testimony, the evidence could just as easily reflect FBI concern that Williams, as a friend and neighbor of the Maggitts, might

---

9. Tommy Maggitt also contends he was unduly prejudiced by evidence which came before the jury indicating that Maggitt owned a knife and a gun. In both instances when such evidence was presented by a witness, the trial judge sustained Maggitt's objection and on one of the two occasions expressly instructed the jury to disregard the witness' comment indicating that Maggitt had a knife. Thus, any prejudicial effect of the testimony was minimal and did not require the district court to grant a mistrial. *See United States v. Uptain,* 552 F.2d 1107, 1108 (5th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977).

10. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

11. Tommy Maggitt's receipt of previously unattainable bond money the day after the robbery both implicated Tommy Maggitt as a potential accessory and was evidence of the close relationship between Tommy Maggitt and Willie Maggitt.

later change his mind about assisting authorities.

Finally, evidence indicating that Williams was told Tommy Maggitt was violent on the night Tommy Maggitt threatened Williams is highly relevant evidence of Maggitt's intent. The district court could have properly determined that the probative value of this evidence outweighed its prejudicial effect. Thus, no abuse of discretion occurred.

## V. SUFFICIENCY OF THE INDICTMENT

18 U.S.C. § 1513(a)(2) punishes threats intended in retaliation against a witness for having given information to "a law enforcement officer." 18 U.S.C. § 1515(4) defines "law enforcement officer" as "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government...." Count three of the indictment in the instant case charged that:

> On or about January 11, 1985, in the Northern District of Mississippi, TOMMY MAGGITT, defendant herein, did knowingly threaten to engage in conduct which would cause bodily injury to another person, that is did state to Willie Harold Williams that Williams "could have an accident," with intent to retaliate against Williams for his having given information *to law enforcement officers* relating to the commission of the federal offense of armed bank robbery by defendant's brother Willie B. Maggitt; In violation of Section 1513 of Title 18 of the United States Code.

Maggitt contends that count three of the indictment is defective and should have been dismissed by the district court for failing to allege a necessary element of the offense, *i.e.,* the federal connection of the law enforcement officers to whom Williams provided information.

 The test to determine the sufficiency of an indictment is well established. An indictment is sufficient if it contains the essential elements of the offense so that it fairly informs the defendant of the charge against him. *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). An indictment is to be read in light of its purpose, which is to inform the accused of the charges. *United States v. Chavis,* 772 F.2d 100, 110 (5th Cir.1985); *United States v. Mouton,* 657 F.2d 736, 739 (5th Cir.1981). Its validity is governed by practical, not technical, considerations. *United States v. Lennon,* 751 F.2d 737, 743 (5th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985).

 In this light, we conclude that the allegations contained in count three of Maggitt's indictment did sufficiently charge an offense under 18 U.S.C. § 1513. The indictment tracks the statutory language of section 1513 which includes all the elements of the offense. *See United States v. Davis,* 592 F.2d 1325, 1328 (5th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979) ("This circuit has held that an indictment is generally sufficient if it sets forth the offense in the words of the statute including all the elements."). In addition, the indictment provides sufficient factual particulars to adequately inform Tommy Maggitt of the charges against him. *See United States v. Montemayor,* 703 F.2d 109, 117 (5th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). In particular, the indictment identifies the victim of the threat, the precise character of the threat, the date on which the threat occurred, and the purpose of the threat. That the indictment failed to expressly include the statutory definition of a "law enforcement officer" does not render the indictment insufficient or inadequate to serve its function. *See generally United States v. Williams,* 679 F.2d 504, 508 (5th Cir.1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 963 (1983) (an indictment need not set forth facts and evidentiary details necessary to establish each of the elements of the charged offense). Thus, while it was incumbent upon the Government in the instant case to establish at trial that the "law enforcement officers" were FBI agents, the Government's failure to make such a specification

in the indictment did not render the indictment insufficient.

## VI. MULTIPLICITY OF THE INDICTMENT

Finally, Tommy Maggitt argues that his indictment is multiplicious in violation of the double jeopardy and due process clauses of the Fifth Amendment. Based on his threat to kill Williams, Tommy Maggitt was charged in count four of the indictment with witness tampering in violation of 18 U.S.C. § 1512 and in count three of the indictment with retaliation against a witness in violation of 18 U.S.C. § 1513.

The issue of multiplicity arises where, as in the instant case, the same act or conduct constitutes a violation of two or more distinct statutory provisions. An indictment is multiplicious when a single *offense* is charged in more than one count. *United States v. Swaim*, 757 F.2d 1530, 1536 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985). However, the fact that a defendant is charged twice in an indictment for the same conduct does not necessarily mean he is being charged with the same offense. One act may violate two or more statutes and constitute independent offenses. *United States v. Passman*, 460 F.Supp. 912, 916 (W.D.La.1978).

Whether charges are multiplicious turns primarily on whether each charge requires proof of a different element from each other charge. *See United States v. Briscoe*, 742 F.2d 842, 845 (5th Cir.1984); *United States v. Crosby*, 713 F.2d 1066, 1079 (5th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). If one element is required to prove the offense in one count which is not required to prove the offense in the second count, no multiplicity exists. *United States v. Swaim*, 757 F.2d at 1536; *United States v. Free*, 574 F.2d 1221, 1224 (5th Cir.), *cert. denied*, 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (1978) (quoting *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1983)).

Based on the foregoing principles, we conclude that the witness tampering and retaliation charges in Tommy Maggitt's indictment are not multiplicious. Each charge is proscribed by a separate statutory provision and the facts necessary to one are not necessary to the other. For example, tampering under 18 U.S.C. § 1512 requires proof, *inter alia*, that the intended victim was to participate in a pending or future proceeding. To prove retaliation under 18 U.S.C. § 1513, in contrast, the Government must establish that the victim had given testimony previously and that the defendant's acts were intended to be in retaliation for the prior testimony.

Recognizing that the multiplicity inquiry is ultimately a question of legislative intent, *see United States v. Chrane*, 529 F.2d 1236, 1238 (5th Cir.1976) ("whether [the defendant] committed one offense or several offenses is a question of legislative intent."), we further note the absence of any indication of congressional intent to preclude simultaneous prosecution for a single act under sections 1512 and 1513. Each section unambiguously authorizes punishment for a violation of its terms. *See Albernaz v. United States*, 450 U.S. 333, 337, 101 S.Ct. 1136, 1141 (1981). Moreover, the legislative history does not preclude cumulative punishments under sections 1512 and 1513.[12] *See id.* at 342–43, 101 S.Ct. at 1143–44. In these circumstances

---

12. The Senate Judicial Committee Report relied upon by Tommy Maggitt states:

Section 1512 applies to offenses against witnesses, victims, or informants which occur before the witness testifies or the informant communicates with law enforcement officers; while Section 1513 applies to offenses against witnesses or informants after they have testified or reported information about the crime to law enforcement officers.

S.Rep. No. 97–532 (Aug. 19, 1982), *reprinted in* 1982 U.S.Code Cong. & Adm.News 2515, 2520. Contrary to Maggitt's assertion, this report does not suggest a legislative intent to preclude simultaneous prosecution under sections 1512 and 1513 for a single act. Rather, the report merely recognizes the differing elements of each offense.

and given that each statutory provision requires proof of a fact that the other does not, separate counts charging that a single act violated both 18 U.S.C. § 1512 and 18 U.S.C. § 1513 are not multiplicious. *See also United States v. Wilson,* 565 F.Supp. 1416, 1431–33 (S.D.N.Y.1983).

## VII. CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.