530 So.2d 1045 (1988)
Felipe BELTRAN, Appellant,
v.
The STATE of Florida, Appellee.
No. 86-1345.
District Court of Appeal of Florida, Third District.
September 6, 1988.
*1046 Bennett H. Brummer, Public Defender, and Samek and Besser and Lawrence Besser, Sp. Asst. Public Defender, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Steven T. Scott, Asst. Atty. Gen., for appellee.
Before NESBITT, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
Felipe Beltran was charged in a three-count information with the robbery and attempted murder of one Miguel Perez on June 9, 1985, and the first-degree murder of Perez on the following day, June 10, 1985. The State's avowed theory of the joinder of these offenses was that Beltran had hired two individuals to kill Perez, and that the individuals' efforts were thwarted on the 9th, but successful on the 10th. Before trial, the defendant moved to sever as being improperly joined Counts Two and Three (the robbery and attempted murder counts arising from the activities of June 9) from Count One (the first-degree murder count arising from the activities of June 10). The trial court denied the severance, but at the conclusion of the State's case granted the defendant's motion for judgment of acquittal on the charges of robbery and attempted murder. The defendant was thereafter found guilty of manslaughter with a firearm, a lesser-included offense of the first-degree murder charge. He appeals from the judgment of conviction and sentence imposed upon him, raising as his primary point the denial of his severance motion.
The acts and transactions which occurred on June 9 and those which occurred on June 10 are not connected in the sense contemplated by Florida Rule of Criminal Procedure 3.150(a), which permits joinder of offenses in the same information when the offenses "are based on the same act or transaction or on two or more connected acts or transactions." True, the victim of the crimes  Perez  was the same, but such a connection, standing alone, is manifestly an insufficient predicate for joinder. Perez did not identify his assailants of June 9, and there was no other admissible evidence connecting the alleged hired guns of the 10th to the crimes committed on the 9th or anything to show, in the State's wishful words, that "[t]he same hit men were used. The motive was the same."[1]
*1047 But even as the offenses of the 9th and the 10th were so disconnected from each other as to create a misjoinder, the proof concerning the robbery and attempted murder of Perez on the 9th so utterly failed to establish that the two culprits of the 9th were the same as the manslaughterers of the 10th that the defendant can hardly be deemed to have been harmed by the jury having heard it. Indeed, it could well be argued that the State's wholly unsuccessful efforts to tie the defendant to the bungled crimes of the 9th might well have undermined its efforts to convince the very same jury that the defendant was tied to the crime of the 10th, thus making the joinder not only harmless but beneficial to the defendant. Needless to say, when it came time for closing argument, the State made no further mention of anything that occurred on the 9th and, it of course follows, any connection between the events of the 9th and 10th.
Considering all of these circumstances  the lack of any bolstering effect of the erroneously admitted hearsay evidence concerning the robbery and attempted murder of the 9th, the court's acquittal of the defendant on these charges and instruction to the jury to disregard all reference to them, and the substantial direct evidence through the testimony of two witnesses that the defendant had indeed hired two men to kill Perez to avoid paying a drug debt  we are convinced that the error of the misjoinder is harmless. The outcome of this case thus depends upon whether the error of misjoinder is properly subject to a harmless error analysis.
Florida Rule of Criminal Procedure 3.152(a)(1) provides that where there has been an improper joinder of offenses in the same information, "the defendant shall have a right to a severance of the charges upon timely motion thereof." While the language "shall have a right to a severance" suggests that a denial of a requested severance of charges results in a per se reversal, the language has not always been so literally construed. While this court has flatly announced that where charges are misjoined, prejudice to the defendant is conclusively presumed, see, e.g., Essex v. State, 478 So.2d 450 (Fla. 3d DCA 1985); Finlay v. State, 424 So.2d 967 (Fla. 3d DCA 1983); McMullen v. State, 405 So.2d 479 (Fla. 3d DCA 1981); Macklin v. State, 395 So.2d 1219 (Fla.3d DCA 1981); see also Puhl v. State, 426 So.2d 1226, 1227 (Fla. 4th DCA 1983) (noting that "[t]he weight of authority in this state ... is that prejudice is presumed from an improper joinder of offenses"), we have also declared that the misjoinder of offenses is reversible error "only if it results in a miscarriage of justice or has injuriously affected the substantial rights of the defendant." Harris v. State, 414 So.2d 557, 558 (Fla. 3d DCA 1982). Although the conclusive presumption of prejudice rule enjoyed the support of earlier federal cases construing the like federal joinder rule, since United States v. Lane, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), misjoinder of charges under the comparable federal rule no longer results in per se reversal, but instead is subjected to a harmless error analysis.[2]
*1048 Of course, in construing our misjoinder rule, we need not follow the lead of Lane and its federal progeny; in the absence of a binding decision of the Florida Supreme Court on the subject,[3] we are free to adhere to a conclusive presumption of prejudice rule. Because, however, Florida courts have traditionally analyzed our rule on joinder by looking to federal decisions construing the rule's federal counterpart upon which our rule was based, see Adams v. State, 423 So.2d 439 (Fla. 4th DCA 1982); Wilson v. State, 298 So.2d 433 (Fla. 4th DCA 1974), we believe the appropriate resolution of this case is to follow the United States Supreme Court's lead in Lane (and our own prescient decision in Harris v. State, 414 So.2d 557) and apply a harmless error test to this case.
Recognizing that the harmless error inquiry is "an extremely weighty matter implicating profound notions of fairness and justice, and, thus, must be undertaken with great caution," United States v. Maggitt, 784 F.2d 590, 595 (5th Cir.1986), we nonetheless reemphasize that we have little difficulty in concluding that the misjoinder here was harmless. In this case, unlike others in which there is strong evidence of defendant's criminal conduct as to each of the misjoined counts which may result in a spillover effect, there was, as the trial court recognized in acquitting the defendant on Counts Two and Three, no evidence which pointed to the defendant's guilt of the crimes charged in Counts Two and Three. Compare, e.g., United States v. Foutz, 540 F.2d 733, 736 (4th Cir.1976) ("One inevitable consequence of a joint trial is that the jury will be aware of evidence of one crime while considering the defendant's guilt or innocence of another."); Drew v. United States, 331 F.2d 85, 88 (D.C. Cir.1964) (defendant may be prejudiced by jury's using evidence to infer criminal disposition to defendant or cumulate evidence to reach guilty verdict when evidence on each charge is insufficient); United States v. Lotsch, 102 F.2d 35, 36 (2d Cir.1939) ("There is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively."). See also United States v. Halper, 590 F.2d 422, 430-31 (2d Cir.1978). Ironically, had there been evidence implicating the defendant in the events of June 9, then the acts and transactions of June 9 and June 10 would have been connected and joinder would have been proper.[4]
*1049 We hereby certify to the Florida Supreme Court the following question of great importance to the administration of justice:
DOES THE HARMLESS ERROR RULE APPLY TO CASES IN WHICH OFFENSES HAVE BEEN MISJOINED IN A SINGLE INFORMATION?
AFFIRMED.
NOTES
[1] Although the trial court permitted the State to elicit from a police officer that, at the hospital on the night of June 9, Perez told him that earlier in the day he had been beaten and robbed by two men who stole three gold chains from his person, this testimony  even if minimally probative to establish that the two men hired by the defendant to kill Perez were the same as the two men who bungled the assault on Perez on the 9th  was, as the State at oral argument conceded, unquestionably hearsay and, without dispute, not within any recognized exception to the rule prohibiting the introduction of hearsay testimony. The error of the admission of this hearsay was belatedly recognized by the trial court, which, after further reflection, struck the testimony and instructed the jury to disregard it. Therefore, there was no "proof" to connect the defendant to any occurrence on the 9th (and nothing to establish, nor any attempt by the State to establish, that a gold chain that the defendant gave to someone on the 9th was one or even resembled one taken from Perez), and the trial court quite correctly acquitted the defendant of the counts involving the events of the 9th.
[2] Lane involved a misjoinder of a count charging James Lane only, with counts charging James and his brother Dennis, and a count charging Dennis only. To the extent that it could be argued that Lane does not clearly hold that a harmless error analysis applies to misjoinder of charges, later federal cases make it clear that both misjoinder of charges and misjoinder of defendants may be harmless error. See United States v. Gorecki, 813 F.2d 40 (3d Cir.1987); United States v. Anderson, 809 So.2d 1281 (7th Cir.1987). Cf. 1 C. Wright, Federal Practice and Procedure § 145, at 531 (2d ed. 1982) (pre-Lane: "there is no indication in any of the cases that the courts see Rule 8(a) [joinder of offenses] as posing a different problem from Rule 8(b) [joinder of defendants] with regard to harmless error, and the cases under the two branches of the rule are cited interchangeably.").
[3] In Paul v. State, 385 So.2d 1371 (Fla. 1980), the Florida Supreme Court, adopting Judge Robert Smith's dissenting opinion in the district court, found an improper joinder. The court pointedly stated, however, that it was making "no comment" on that portion of the dissent which discussed the impact of the Williams rule (pertaining to similar act evidence) on the issue. In essence, then, the court skirted the conclusive presumption versus harmless error issue.

Later, in Quevedo v. State, 436 So.2d 87 (Fla. 1983), the court held that it was without jurisdiction to review an alleged conflict between Wilson v. State, 298 So.2d 433 (Fla. 4th DCA 1974) (holding misjoinder of defendants per se reversible without showing of prejudice), and Quevedo v. State, 413 So.2d 136 (Fla. 3d DCA 1982) (holding that the misjoinder, if any, of defendants was entirely harmless).
[4] In Adams v. State, 423 So.2d 439 (Fla. 4th DCA 1983), the Fourth District held en banc that it would use a harmless error analysis to judge claims of improper joinder based on a pleading error. The court stated that when defendants claim that counts are improperly joined, the court's inquiry should not be limited to what appears in the information but should look further to the evidence presented at trial or, presumably in the case of the trial court, to be presented at trial. The court thus might find that joinder in the information appears to be improper, but an examination of the evidence shows that the pleading misjoinder was harmless, since the counts were in fact based on the same acts or transactions.

Unlike the court in Adams, we believe that where the evidence shows that the counts are based on the same acts or transactions, there is not, as Adams holds, harmless misjoinder, but instead, proper joinder. Setting this analytic dispute aside, after reviewing both the information and the evidence presented at trial in the present case, we have determined that joinder was improper. Thus, unlike the court in Adams, we must address the question of whether a joinder adjudged to have been improper after considering the evidence is subject to a further harmless error analysis. The Adams court, in contrast, pointedly noted that "[s]ince we find that the evidence at trial justifies joinder in the case at bar, we need not reach the question of whether improper joinder is subject to the harmless error rule." 423 So.2d at 442 n. 3. The Fourth District has since reaffirmed that prejudice is presumed from an improper joinder of offenses. See Puhl v. State, 426 So.2d 1226 (Fla. 4th DCA 1983).