UNITED STATES of America

v.

Earnest RANKIN and Sylvia Redd.

Criminal Action No. 3:10CR41TSL–LRA.

United States District Court, S.D. Mississippi, Jackson Division.

May 24, 2011.

Jason Scott Gilbert, Eugene Carlos Tanner, III, U.S. Attorney's Office, Jackson, MS, Jay Tresca Golden, U.S. Attorney's Office, Gulfport, MS, for United States of America.

Gerald P. Collier, Stamps & Stamps, Michael Verdier Cory, Jr., Danks, Miller & Cory, Michael L. Scott, Michael L. Scott,

Attorney, Jackson, MS, for Earnest Rankin and Sylvia Redd.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motions of defendant Sylvia Redd to dismiss the first superseding indictment as time barred; to quash the indictment for failure to set forth essential elements of the crime; and to quash the indictment as multiplicitous.[1] Also before the court is the motion of defendant Earnest Rankin to dismiss the indictment as time-barred. The government has responded in opposition to each of these motions. The court, having considered the motions and memoranda of authorities submitted by the parties, concludes that Redd's motion to quash the indictment as multiplicitous should be granted to the extent set forth herein, and that the remaining motions should be denied.

On April 20, 2010, the grand jury returned a one-count indictment, charging that beginning in September 2003, and continuing through July 2005, Redd, a nurse, and her former employer, Dr. Earnest Rankin, conspired to violate 42 U.S.C. § 1320a–7b, which prohibits, among other things, the receipt of remuneration in exchange "for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program."

On August 3, 2010, the grand jury returned a superceding indictment which charged the pair in count 1 with conspiracy to violate both 42 U.S.C. § 1320a–7b and 18 U.S.C. § 699, which, respectively, make it a crime to knowingly and willfully "solicit [ ] or receive[ ] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program," and to "knowingly and willfully embezzle[ ], steal[ ], or otherwise without authority convert[ ] to the use of any person other than the rightful owner, owner, in an amount greater than $100, the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program." According to the superceding indictment, the conspiracy began in September 2003 and continued "through in or about August, 2005."

Count 1 of the superceding indictment, like the original indictment, sets forth two overt acts involving Rankin, and two overt acts by Redd, charging as follows:

a. In or about November 2003, the defendant, **EARNEST RANKIN,** signed a CMN (Certificate of Medical Necessity) for a power wheelchair for Medicare Beneficiary D.B., when the defendant **EARNEST RANKIN,** knew or should have known that D.B. did not qualify for a power wheelchair under the applicable Medicare regulations.

b. In or about October, 2004, the defendant, **EARNEST RANKIN,** singed a CMN for a power wheelchair for Medicare Beneficiary W.G., when the defendant **EARNEST RANKIN,** knew or should have known that W.G. did not qualify for a power wheelchair under the applicable Medicare regulations.

. . .

---

1. On July 19, 2010, prior to the issuance of the superceding indictment, Redd filed a motion to dismiss the original indictment as time-barred. This motion is denied as moot.

d. On or about June 20, 2005, the defendant, **SYLVIA REDD**, received $300.00 as a kickback for her referral of a Medicare beneficiary to Longwind Products and Services, Inc., which resulted in the sale of a power wheelchair to the Medicare beneficiary.

e. On or about August 18, 2005, the defendant, **SYLVIA REDD**, received $700.00 as a kickback for her referral of a Medicare beneficiary to Longwind Products and Services, Inc., which resulted in the sale of a power wheelchair to the Medicare beneficiary.

Count 2 charges Redd and Rankin with a substantive violation of 18 U.S.C. § 669, with the offense having begun in or about September 2003 and having "continue[d] through in or about August, 2005." Finally, Count 3 charges the pair with a substantive violation of 18 U.S.C. § 641, which makes it a crime to "steal[ ], purloin[ ], or knowingly convert[ ] to [one's] use" more than $1,000 in funds belonging to the United States. According to the indictment, Redd and Rankin converted funds belonging to the United States by receiving Medicare program funds from the Centers for Medicare and Medicaid Service to which they were not entitled.

■ Both Redd and Rankin seek dismissal of the superceding indictment on the basis that it is time-barred. As to count 1, defendants cite *United States v. Peterson*, 488 F.2d 645, 649 (5th Cir.1974), for the proposition that a conspirator's conduct after the submission of a false claim could not constitute an overt act which supported a conspiracy charge, and they argue that the overt acts alleged to have been committed by Redd in June 2005 and August 2005, namely the receipt

of money as a kickback for referrals, cannot constitute overt acts in support of the conspiracy. From this, they reason that the indictment is time-barred because it fails to allege any overt act within the five-year limitations period. *See* 18 U.S.C. § 3282 (establishing five-year limitations period for any non-capital offense); *United States v. Parker*, 586 F.2d 422, 430 (5th Cir.1978) (statute of limitations for conspiracy charge begins to run on date of last alleged overt act). In the court's opinion, defendants' reliance on *Peterson* is misplaced.[2]

In *Peterson*, the Fifth Circuit, examining the defendant's argument that there was insufficient evidence to support his conviction for conspiracy to defraud the government by "ma[king] false statements to a government agency which impeded the functioning of that agency," stated:

> In reviewing the evidence marshalled by the government in support of the conspiracy charge, it is critical to note that conduct of Dr. Peterson subsequent to the time that claims were filed with Group Medical and Surgical Service is germane only to the extent that such conduct supports the inference that he had planned with James Peterson to file the claims containing the misrepresentation. Since the conspiracy had run its course *eo instante* upon the filing of these claims, Dr. Peterson's conduct upon receipt of checks in payment of claims could not constitute an overt act in its furtherance.

488 F.2d at 649–50 and n. 9.

■ In contrast to the defendant in *Peterson*, who was charged with conspiracy to defraud the government by *making*

---

**2.** As the government correctly points out, because the superceding indictment did not broaden or substantially amend the conspiracy charge set forth in the original indictment, the statute of limitations as to this charge was tolled upon the filing of the original indictment in April 2010. *United States v. Schmick*, 904 F.2d 936, 941 (5th Cir.1990).

false statements, the superceding indictment in this case charges that it was an object of the conspiracy for Redd and Rankin to be enriched by *receiving* kickbacks with a conspiracy to receive remuneration in exchange for making a referral. Accordingly, here, the alleged conspiracy necessarily would have not "run its course" until such time as the kickback was received such that Redd's alleged receipt of the kickbacks in June and August of 20 clearly constitute overt acts in furtherance of the alleged conspiracy. *See United States v. Ely,* 140 F.3d 1089, 1090 (5th Cir.1998) (indictment not time-barred where "the conspiracy began outside the limitations period, the conspiracy continued, and overt acts were committed within the limitations period").

■ Both defendants argue, alternatively, that since Redd ceased to have a working relationship with Rankin in February 2005 (due to a foot injury), then she necessarily withdrew at that time from any conspiratorial relationship which may have existed and thus could not thereafter have committed the overt acts alleged in the indictment. However, the question of whether and when Redd withdrew from the alleged conspiracy is a factual issue for the jury's consideration and not and issue for determination by the court. Defendants further argue that as a matter of law, Redd could not have committed the overt acts alleged in the indictment since a nurse does not have the legal authority to sign a CMN. This argument is also misplaced; the indictment does not allege that

Rankin signed an unauthorized CMN, but rather that she received a kickback for a referral.

■ Defendant Rankin maintains that Counts 2 and 3 of the superceding indictment are time-barred because "they are alleging violations that allegedly occurred more than five years prior to the return of the superceding indictment" on August 3, 2010. However, as the government points out, the indictment charges a continuing violation which began "in or about September, 2003 and continue[d] through in or about August, 2005." Accordingly, as the indictment alleges that the offense continued through August 2005, it is facially sufficient to survive an attack under Rule 12(b).[3] Based on the foregoing, defendants' motions to dismiss the indictment as time-barred will be denied.

In her first motion to quash, Redd seeks dismissal on the basis that the indictment lacks the requisite factual specificity and thus fails to specify that a crime was committed, arguing that count 1 is deficient since it does not contain the names of the Medicare beneficiaries she is alleged to have referred to Rankin, and that counts 2 and 3 are deficient because they do not because it does not contain a "description of the monies, funds and property" allegedly converted. In response, the government maintains that the indictment, which essentially tracks the statutory language, is facially valid and not subject to dismissal.[4]

■ "An indictment is sufficient if it contains the elements of the offense

---

3. The court's ruling in this regard does not preclude defendants from revisiting the statute of limitations issue, depending on what the proof at trial shows regarding the dates on which the acts charged in the indictment actually occurred.

4. The government asserts, and the court is inclined to agree, that Redd's argument offered in support of this motion is, at bottom, a

rehashing of her motion for a bill of particulars, which was denied by the magistrate judge on June 16, 2010. While denying the motion for a bill of particulars, the magistrate judge did order the government to provide to defendant Redd the names of the Medicare beneficiaries noted in the indictment. The government has since apprised the court that it is "unable to provide" Redd with the names of the Medicare beneficiaries that she alleged-

charged, fairly informs the defendant what charge he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Gordon,* 780 F.2d 1165, 1169 (5th Cir.1986). Moreover, "[t]he test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id.* "It is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense." *Id.* at 1169–70.

In *United States v. Kay,* 359 F.3d 738 (5th Cir.2004), the Fifth Circuit "determine[d] whether an indictment that sets out the elements of the offense charged *merely by tracking the words of the statute itself,* is insufficient." *Id.* at 756 (emphasis in original). Collecting cases, the court observed that "[t]he cases in which an indictment that parrots the statute is held to be insufficient turn on a determination that factual information that is *not* alleged goes to the very *core of the criminality* under the statute." *Id.* at 756–57. The court further observed,

> The Supreme Court took this approach in *Russell v. United States,* [369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)], in which it found indictments defective because the allegations under 2 U.S.C. § 192, which prohibits witnesses before congressional committees from "refus[ing] to answer any question pertinent to the question under inquiry," [*id.* at 752 n. 2, 82 S.Ct. at 1038], failed to identify the "question under inquiry." The Court ruled that the "core of crimi-

nality" under the statute was the pertinency to the subject under inquiry of the question a witness refused to answer. [*Id.* at 771, 82 S.Ct. at 1038]. The Court stated: "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." [*Id.* at 771, 82 S.Ct. at 1038]. The Court concluded that the indictments failed this test because, even though they did list the questions that the defendants had refused to answer, they failed totally to specify the topic under inquiry, which was the key to the legality or illegality of the defendants' acts. [*Id.* at 765–68, 82 S.Ct. at 1038]. In short, the defendants faced trial with the "chief issue undefined." [*Id.* at 766, 82 S.Ct. at 1038].

*Id.* at 757. After reviewing cases from the First and Second Circuits which applied *Russell,* the Fifth Circuit announced:

> In terms of the sufficiency of the indictment, however, the question is whether the business nexus element-which in the instant indictment is merely a paraphrase of that part of the statute-goes to the "core of criminality" [*Russell,* 369 U.S. at 764, 82 S.Ct. at 1038], under the statute and contains generic terms, requiring more particularity. Stated differently, the question is whether the lack of detail in that part of the indictment that deals with this one element is more like an absence of detail as to how the crime was committed than a failure to specify what the crime was.

*Id.* at 758–59.

■ Count 1 of the indictment charges defendants with a conspiracy to violate 42

---

ly received a kickback for referring. Despite the government's inability to determine the specific beneficiaries, it has offered to provide Redd with access to Longwind Product and Services' Medicare claims history, an oppor-

tunity that Redd has declined. For her part, Redd has not provided an explanation for her failure to avail herself of this opportunity or any argument that such a review would have been unfruitful.

U.S.C. § 1320a–7b(b), which prohibits, among other things, receiving remuneration for a referral of "an individual" to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program. Redd has pointed to nothing in the statutory language (and the court perceives nothing) which would suggest that the identity of "an individual" is at the core of criminality of this offense. On the contrary, the fact that Congress used a generic term, "an individual," and further did not purport to require that "an individual" actually be eligible to receive benefits from a Federal health care program, instead providing only that "payment may be made in whole or in part from a Federal health care program," demonstrates that the identity of "an individual" is not central to the criminality of this statute.

■ Likewise, the court is not persuaded that the specific amounts of funds at issue are at the core of the criminality of the statutes alleged in counts 2 and 3 to have been violated.[5] Accordingly, defendant Redd's first motion to quash will be denied.

■ In her second motion to quash, Redd, citing *United States v. Ogba,* 526 F.3d 214 (5th Cir.2008), first asserts that the conspiracy count is multiplicitous of counts 2 and 3. The government argues in response generally that "the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both," and it points out that while proof of an agreement is a necessary element to the conspiracy count, it is not an element of either of the substantive counts. In her rebuttal on this issue. Redd concedes that, in the usual case where both conspiracy and substantive violations are charged, multiplicity is not an issue. She alleges, however, that because, as a nurse, she was not qualified to sign a CMN, which was required to obtain payment from Medicare, then in order to obtain a conviction against her on counts 2 and 3, the government will necessarily have to prove an agreement between her and someone who could sign a CMN. According to Rankin, the fact that proof of

---

5. 18 U.S.C. § 669 provides:

(a) Whoever knowingly and willfully embezzles, steals, or otherwise without authority converts to the use of any person other than the rightful owner, or intentionally misapplies any of the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program, shall be fined under this title or imprisoned not more than 10 years, or both; but if the value of such property does not exceed the sum of $100 the defendant shall be fined under this title or imprisoned not more than one year, or both.

(b) As used in this section, the term "health care benefit program" has the meaning given such term in section 24(b) of this title.

(emphasis added).

18 U.S.C. § 641 provides:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater

(emphasis added).

an agreement will be necessary to prevail on the conspiracy count and the substantive counts demonstrates multiplicity. The court disagrees.

Even assuming that Redd could not directly steal or "otherwise convert" the Medicare funds, the government need not prove a conspiratorial agreement in order to obtain a conviction against Redd on the substantive counts since the substantive counts charge that the defendants aided and abetted each other. *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949) ("For such aiding and abetting, the Government must prove: the elements of the substantive offense occurred; and the defendant associated himself with the venture, participated in it as in something he wished to bring about, and sought by his action to make it succeed.") (internal citations and quotations omitted); *United States v. Cowart*, 595 F.2d 1023, 1030 (5th Cir.1979) ("Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal where he consciously shares in a criminal act, [r]egardless of the existence of a conspiracy.") (quoting *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954)).

Redd also asserts counts 2 and 3 are multiplicitous of each other. That is, according to Redd,

Each statute requires that the government prove that the defendant did knowingly steal funds belonging to the United States (which includes funds belonging to Medicare Trust Fund). Furthermore, the first superseding indictment makes no distinction as [to] whether the funds alleged to have been stolen and referenced in counts 2 or 3 are different set[s] of funds belonging to the government. It appears the gov-

ernment is seeking multiple punishments for same offenses and/or allegations of theft of the same funds.

The government takes the position that counts 2 and 3 are not multiplicitous because the statutes, as written, require proof of different elements and because, in any event, it is manifest that by deliberately creating two separate crimes, Congress intended to authorize cumulative punishments.

■ As the Supreme Court has explained, "[t]he Double Jeopardy Clause is cast explicitly in terms of being 'twice put in jeopardy.'" *United States v. Severns*, 559 F.3d 274, 282 (5th Cir.2009) (quoting *Missouri v. Hunter*, 459 U.S. 359, 365, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)). The Court "has 'consistently interpreted [the Double Jeopardy Clause] to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'" *Id.* (internal quotations and citations omitted). Thus, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri*, 459 U.S. at 366, 103 S.Ct. at 678. As the Fifth Circuit has recognized,

One of the Court's seminal decisions in this area, *Blockburger v. United States*, stated that "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." [284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)]. The Supreme Court has subsequently explained that " '[t]he assumption underlying [this] rule is that Congress ordinari-

ly does not intend to punish the same offense under two different statutes.' " [*Hunter,* 459 U.S. at 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (quoting *Whalen v. United States,* 445 U.S. 684, 691, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980))]. It follows that " 'where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.' " *Id.* (quoting [*Whalen,* 445 U.S. at 691–92, 100 S.Ct. 1432)]. The Supreme Court made clear in *Missouri v. Hunter* that the *Blockburger* inquiry as to whether two statutes proscribe the same conduct is a rule of statutory construction utilized when the legislative body's intent is not clear. [*Id.* at 368, 103 S.Ct. 673]. When a state or federal "legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." [*Id.* at 368–69, 103 S.Ct. 673].

*Severns,* 559 F.3d at 282–83.

■■■ Here, the court initially rejects the government's argument that Congress, by deciding to create two separate crimes, necessarily intended to allow for the cumulative punishment of the same offense. As explained in *Severns,* in the absence of clear legislative intent otherwise, " '[t]he assumption . . . is that Congress ordinarily

does not intend to punish the same offense under two different statutes.' " *Id.* at 282.[6] Going further, the court has reviewed both the language of 18 U.S.C § 641 and § 669 as well as the scant legislative history of the statutes and found no clear legislative intent to impose cumulative punishments. Accordingly, the court now turns to the *Blockburger* test.

■■■ As stated above, under *Blockburger,* "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182. On this point, the government argues that § 641 criminalizes the theft of funds belonging to the government, while § 669 applies to any health care benefit program, public or *private.* Redd counters that under *United States v. Ogba,* 526 F.3d 214, 233 (5th Cir.2008), the court also "must look to the proof necessary for each element of each offense in the case" and that, in doing so, it is clear that counts 2 and 3 are multiplicitous. Having considered the parties' arguments, the court concludes that Redd is correct.

In *Ogba,* after examining 42 U.S.C. § 1320a–7b(b)(2)(A) and 18 U.S.C. § 1347, and concluding that there was no "clear indication" of legislative intent to permit cumulative punishments for one offense under two separate statutes, the Fifth Circuit applied *Blockburger.* In doing so, it

---

**6.** The government cites *United States v. Maggitt,* 784 F.2d 590, 599 (5th Cir.1986), as the leading Fifth Circuit case interpreting *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), and for the proposition that "absent any indication of congressional intent to preclude simultaneous prosecution for a single act of under

multiple sections indicates that there is no multiplicity." Notably, *Maggitt* does not cite *Missouri* and the portion of the opinion wherein the court did note an absence of congressional intent to preclude simultaneous prosecution under the separate statute was clearly dicta.

acknowledged that "[o]n their face, the statutes each require proof of an additional fact that the other does not." *Ogba,* 526 F.3d at 234. The court's inquiry, however, was not concluded; instead the Fifth Circuit stated:

> But we may not stop here. Under *Blockburger* we must look to the proof required for each necessary element of each offense in the case. In *Gavieres v. United States,* the Court, applying the test later adopted in *Blockburger,* asked not only whether each statute required proof of an additional fact that the other did not, but also whether "the offenses charged [under the statute], and of which a conviction has been had in the municipal court and in the Court of First Instance, [were] identical [sic]," [220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489 (1911)] looking to the "charge contained in the record." The Court followed a similar path in *Whalen,* where a defendant was charged with rape and felony murder. The Government argued that the felony murder statute, on its face, did not necessarily require proof of rape: a murder committed in the course of robbery, kidnapping, or arson, for example, is a felony murder. As a result, the Government argued, conviction for rape required proof of an additional fact not required for felony murder. The Court rejected this argument, looking specifically to the necessary elements to be proved under the statutes as charged and holding that,

> > Where the offense to be proved does not include proof of a rape-for example, where the offense is a killing in the perpetration of a robbery-the offense is of course different from the offense of rape.... In the present case, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal

offense requires proof of every element of another offense. [445 U.S. at 694, 100 S.Ct. 1432].

*Ogba,* 526 F.3d at 234. Here, where the government does not deny that the money allegedly stolen or converted under § 641 (count 3) is money from a public health care benefit program, *see* § 669 (count 2), the court is persuaded that, as charged in this indictment, counts 2 and 3 set forth the same offense and thus, are multiplicitous. This being said, the cure for multiplicity is not dismissal of the indictment in toto, but rather, the government shall, by June 6, 2011, elect the count on which it wishes to proceed and the court will dismiss the other count.

Based on the foregoing, it is ordered that defendant Redd's second motion to quash the indictment is granted to the extent as set forth above, and it is ordered that the remaining motions are denied.