In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00214-CR
______________________________


RODNEY TYRONE BLAYLOCK, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 29632-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            Rodney Tyrone Blaylock—as predicted by informant Florence Thomas—pulled up to the
gasoline pumps at a Kilgore, Texas, convenience store, in a car fitting the description given by
Thomas, at the time she had stated. Officers arrested Blaylock, searched the car, and found cocaine
under the hood, ultimately confirming Thomas' information. From Blaylock's conviction by a Gregg
County jury for possession of a controlled substance with intent to deliver and the resulting sixty
years' confinement  and  a  $5,000.00  fine,  Blaylock  now  appeals,  contending  the  trial  court
 erred  in (1) denying his motion to suppress, (2) allowing testimony of extraneous offenses, (3)
excusing a veniremember on the State's challenge for cause, and (4) giving the jury an instruction
concerning parole. We affirm.
Background Facts
            The informant, Florence Thomas, had begun this sequence of events by telling Jason
Brannon, a Kilgore police detective assigned to the County Organized Drug Enforcement Unit, that
she could arrange a drug sale with Blaylock, from whom she said she had purchased cocaine on
several prior occasions. Forty minutes later, after the informant arranged a meeting with Blaylock
to purchase two ounces of cocaine, she again contacted Brannon, this time describing Blaylock's car
and predicting that Blaylock would arrive at a particular local convenience store within twenty
minutes and that the cocaine would be hidden under his car's hood. When Blaylock arrived as
planned, he parked at the gasoline pumps, stepped out of the car, and reached for a gasoline nozzle
before undercover officers approached him, handcuffing him and checking for weapons. 
            The officers, attempting to protect the identity of their informant, did not immediately search
under the hood of the car, but began simultaneous searches of Blaylock and the trunk and interior
of Blaylock's car. When the officers finally looked under the hood, they discovered what later turned
out to be 53.29 grams of crack cocaine wrapped in foil. 
Motion to Suppress
            In his first point of error, Blaylock contends the trial court erred in denying his motion to
suppress because the arresting officers lacked probable cause for his prolonged detention and the
search of his car. Although the police acted on information provided by an informant, Blaylock
asserts that the informant's reliability was questionable and, despite the State's claim of thorough
police corroboration, the only independently corroborated information provided by the informant was
the description of Blaylock's car—information that could have been supplied by anyone. 
            When reviewing a trial court's ruling on a motion to suppress, appellate courts apply a
bifurcated standard of review, affording a trial court's determination of historical facts almost total
deference while reviewing de novo the court's application of the law to those facts. Maxwell v. State,
73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Under this standard, if the issue involves the
credibility of a witness, making an evaluation of that witness' demeanor important, we will defer to
the trial court's application of the law to the facts. Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim.
App. 1997). If the issue concerns the application of law to undisputed facts, however, the trial court
is not in an appreciably better position than the reviewing court in making such a determination and
we will review the issue de novo. Id. Because the facts underlying the trial court's ruling on
Blaylock's motion to suppress are undisputed, and because the question is whether probable cause
existed at the time of the search or seizure, we review the issue de novo. Even so, we will not
disturb the trial court's ruling on review if it is reasonably supported by the record and is correct on
any theory of law applicable to the case. Brooks v. State, 76 S.W.3d 426, 430 (Tex. App.—Houston
[14th Dist.] 2002, no pet.) (citing Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)).
            The federal and state Constitutions both guarantee the right to be secure from unreasonable
searches  and  seizures  made  without  probable  cause,  U.S.  Const.  amend.  IV;  Tex.  Const.
art. I, § 9, and Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp. 2004), forbids any evidence
obtained in violation thereof to be admitted against an accused. There are, however, certain
exceptions to the warrant requirement under which federal and state law allows warrantless searches. 
Applicable in this case is the automobile exception, which permits officers to conduct a warrantless
search of an automobile as long as there is probable cause to believe that a crime has been committed
and that there is contraband located in the vehicle and "where it is not practicable to secure a warrant
because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant
must be sought." Chambers v. Maroney, 399 U.S. 42, 48–49 (1970); Amos v. State, 819 S.W.2d 156,
160–61 (Tex. Crim. App. 1991). If so, officers are justified in searching every part of the vehicle
and any contents that may conceal the object of the search. United States v. Ross, 456 U.S. 798, 825
(1982).
            In determining probable cause, courts must consider the totality of the circumstances. Angulo
v. State, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987). Although probable cause requires more than
mere suspicion, it requires far less evidence than is needed to support a conviction or even a finding
by a preponderance of the evidence. Middleton v. State, No. 1263-01, 2003 Tex. Crim. App. LEXIS
73, at *22 (Tex. Crim. App. Apr. 23, 2003). Instead, probable cause exists where officers have
reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been
or is being committed. McGee v. State, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003).
            Contrary to Blaylock's claim that the arresting officers lacked probable cause, the record
indicates the officers were reasonable in believing Blaylock possessed contraband concealed in his
car. In the pretrial hearing on Blaylock's motion to suppress, Brannon testified that Thomas had, on
approximately ten prior occasions, purchased narcotics from Blaylock. She would call him by
telephone, request a specific quantity of narcotics, and then meet him at a prearranged location to
complete the transaction. Following the same procedure in this case, officers requested that the
informant arrange to purchase from Blaylock two ounces of cocaine at $1,000.00 per ounce. After
making these arrangements, the informant described Blaylock's car to officers, telling them that he
was to meet her at a nearby convenience store within the next twenty minutes and that the cocaine
would be hidden under the car's hood. Officers subsequently verified the description of Blaylock's
car and set up surveillance at the designated store. 
            In addition to the informant accurately describing Blaylock's car, the State asserts that
probable cause was established when Thomas was also able to accurately predict the location and
time of the arranged meeting. Blaylock, however, dismisses the fact that Thomas was able to
anticipate when he would arrive at the convenience store because the officers had no independent
knowledge regarding Thomas' telephone conversation with him and because they had nothing
corroborating what she might have told him in order to get him to drive to that particular location. 
Specifically, Blaylock asserts there is nothing about traveling to a convenience store that would
suggest any involvement in drug trafficking. While we agree that such an activity, alone, is
insufficient to suggest any wrongdoing, it is a factor that cannot be ignored when considering the
totality of the circumstances. Although police officers may personally observe behavior that is not
overtly criminal, when coupled with the officers' prior knowledge it may, nevertheless, be sufficient
to establish probable cause that an offense has been or is being committed. Lunde v. State, 736
S.W.2d 665, 667 (Tex. Crim. App. 1987); see Munoz v. State, No. 14-00-01531-CR, 2002 Tex. App.
LEXIS 2317, at *18–19 (Tex. App.—Houston [14th Dist.] Mar. 28, 2002, no pet.) (not designated
for publication). Under the totality of the circumstances, we hold that probable cause existed for
Blaylock's detention and the search of his car. The trial court, therefore, did not err in denying
Blaylock's motion to suppress.
Extraneous Offense Evidence
            In his second point of error, Blaylock claims the trial court erred in admitting extraneous
offense evidence. He argues that allowing evidence of his prior narcotics transactions with Thomas
unfairly prejudiced the jury and could only have had the effect of distracting its members 
from the details of the State's case, focusing instead on the State's general portrayal of him as a drug
dealer. We disagree.
 
            While evidence of a person's bad character is not normally admissible to demonstrate his or
her criminal propensities, such evidence may still be admissible if it has relevance apart from
character conformity. Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). One of the
permissible purposes for which relevant evidence may be admitted, for example, is the rebuttal of
a defensive theory. Id. (citing Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988),
overruled on other grounds, Alford v. State, 866 S.W.2d 619 (Tex. Crim. App. 1993)). Taking this
position at trial and on appeal, the State contends Thomas' testimony concerning prior narcotics
transactions with Blaylock was necessary after Blaylock's cross-examination of one of the State's
principal witnesses.
            During his cross-examination of Brannon, Blaylock's counsel clearly suggested that the
arresting officers did not use their full forensic capabilities in processing the evidence and that, if
they had, it would have indicated that Thomas had planted the cocaine in Blaylock's car in an attempt
to frame him. Responding to this defensive theory, the State not only questioned Thomas about
events leading up to Blaylock's arrest, but also concerning the nature of her past dealings with
Blaylock to demonstrate how she knew he typically concealed drugs under the hood of his car. 
Thomas' testimony was simply that she had made narcotics purchases from Blaylock on several prior
occasions and described the procedure that would be followed from her initial request to completing
the transaction. 
            The admissibility of evidence is within the sound discretion of the trial court and, absent an
abuse of that discretion, the trial court's decision will not be disturbed on appeal. Moses, 105 S.W.3d
at 627. A trial court's determination that extraneous offense evidence has relevance apart from
character conformity is no different than any other relevancy determination and will be afforded great
deference as long as the trial court's ruling is within the zone of reasonable disagreement and the
probative value of the evidence is not found to be outweighed by the danger of unfair prejudice. Id. 
Noting the Texas Court of Criminal Appeals' admonition that such a review will rarely result in
reversal, id. (citing United States v. Maggitt, 784 F.2d 590, 597 (5th Cir. 1986); Montgomery v.
State, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991)), we hold that the trial court did not abuse its
discretion by allowing Thomas to testify of extraneous offenses from which she learned how
Blaylock operated.
Excusing a Veniremember
            In his third point of error, Blaylock argues that the trial court erred in excusing a
veniremember on the State's challenge for cause. After reviewing the record, however, including
the following excerpt of the State's questioning of the veniremember, we cannot say the trial court's
action was erroneous.
Q         You think those feelings prevent you from rendering a verdict in this case
because you feel as though you may not be making a right decision?

A         I do.

Q         Is that going to prevent your ability to make a decision in this case?

A         I think it would.

Q         Therefore, you think it would possibly make my burden higher to prove to
you beyond a reasonable doubt?

A         Yes.

Q         I would have to prove it to you 100 percent—

            . . . .

Q         I might have to prove it to you beyond a reasonable doubt 100 percent before
you feel comfortable finding someone guilty?

A         Well, sort of, yes. You could say that, but not so much. It's just my
understanding. I think my understanding is not—I can't comprehend as far as law
[sic] I'm saying.

Q         Do you think it would be better if you did not sit as a juror in this case
because of your feelings about judgment?

A         I do. I came because I was called, but I would rather not.

Q         If you were selected as a juror in this case and were asked to pass judgment
and make a determination of guilt or innocence, what would you do?

A         I would do my best, yes.

Q         Would that feeling—those feelings of not wanting to do it hinder one side or
the other in your decision?

A         Well, that's why I don't want to. I would rather not, but if I was called I would
do my best is all I can do.

Q         Let me ask you this. Would it make it more difficult for me to prove him
guilty if you were called as a juror because of your feelings of not wanting to pass
judgment?

A         It probably would.

Q         It has to be a yes or no. Would it make my job more difficult in the burden
of proof because you would not feel comfortable passing judgment?

A         Yes.

This exchange provides a clear basis on which the trial court could have concluded this particular
veniremember was unable or unwilling to apply the appropriate standard. We hold, therefore, that
the trial court acted well within its discretion in granting the State's challenge for cause.
Jury Instruction on Parole
            In his fourth point of error, Blaylock contends that, during the punishment phase of trial, the
court erroneously instructed the jury concerning parole. Recognizing that the instruction given has
been "legislatively authorized and judicially approved," Blaylock nevertheless argues that the
instruction is paradoxical, inconsistent, ambiguous, contradictory, and violates both the due process
and due course of law requirements of the United States and Texas Constitutions, respectively. As
the Texas Court of Criminal Appeals has already directly addressed these issues, however, this Court
is bound and must overrule this point of error. See Muhammad v. State, 830 S.W.2d 953, 956 (Tex.
Crim. App. 1992) (en banc) (holding parole instruction does not violate federal due process); Oakley
v. State, 830 S.W.2d 107, 110 (Tex. Crim. App. 1992) (en banc) (applying simple rules of
construction clearly removes alleged due course of law taint).
 
 
 
 
 
 
Conclusion
            The trial court did not err in denying Blaylock's motion to suppress, admitting extraneous
offense evidence, excusing a prospective juror for cause, and instructing the jury on parole. We,
therefore, affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 12, 2003
Date Decided:             December 11, 2003

Publish